UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MISTER SOFTEE, INC. and MISTER SOFTEE    :
QUEENS, INC.,                            :
                                         :          **REPORT AND**
                      Plaintiffs,        :          **RECOMMENDATION**
                                         :
           -against-                     :          19-CV-4857 (LDH) (PK)
                                         :
JOAN DIAZ,                               :
                                         :
                      Defendant.         :
                                         :
                                         :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Mister Softee, Inc. ("MSI") and Mister Softee Queens, Inc. ("MSQ") (collectively, "Plaintiffs")

brought this action against Defendant Joan Diaz, alleging violations of the Lanham Trademark Act of

1946, 15 U.S.C. § 1-51 *et seq.* (the "Lanham Act"). (*See* Compl., Dkt. 1.) Before this Court, on referral

from the Honorable LaShann DeArcy Hall, are Plaintiffs' Motion for Default Judgment (the

"Motion") and Plaintiffs' Motion for Attorneys' Fees and Costs ("Fees Motion"). (Dkt. 9; Dkt. 12.)

For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted

as to Plaintiff MSI, and that MSI be awarded injunctive relief and reasonable attorneys' fees and costs.

The undersigned also respectfully recommends that the Fees Motion be granted at a reduced amount.

**BACKGROUND**

**I.        Factual Allegations of Infringement**

Plaintiff MSI is a New Jersey corporation that owns the trademarks "Mister Softee" and related

logos which are registered on the Principal Register of the United States Patent and Trademark Office

("USPTO") at Registration Nos. 2128918 and 0667335 ("Mister Softee trademarks" or    the

"Trademarks").[1]   (Compl. ¶¶ 2, 9.)   MSI is also the franchisor of Mister Softee ice cream truck businesses, which sell ice cream and other frozen desserts.  (*Id.* ¶ 7.)  Plaintiff MSQ is a sub-franchisor to whom MSI has granted the right to use, and to license to others the right to use, the Mister Softee trademarks in conjunction with the offering and sale of franchises in Queens and Long Island, New York.  (*Id.* ¶ 3.)  Since 1956, MSI and its franchisees have advertised and sold their products throughout the region, using the Trademarks to distinguish their business and encourage customer recognition. (*Id.* ¶¶ 7-8, 11.)  Only authorized licensees are permitted to use the Mister Softee trademarks.  (*Id.* ¶ 10.)

Defendant Joan Diaz is an adult individual who operates an ice cream truck bearing New York Plate Number 72302ME.  (*Id.* ¶¶ 4, 12.)  During the course of operating her ice cream truck business in Queens, New York, Defendant used a menu board displaying the Mister Softee trademarks without authorization.  (*Id.* ¶¶ 1, 12, 16.)  Defendant's menu board centrally displays the Trademarks, consisting of the word "Mister Softee" in large typeface and a logo of a cartoon ice cream cone with a smiling face and bow tie.  (*Id.* ¶¶ 9, 12; Ex. A to Compl., Dkt. 1-2.)

In or around July 2019, Plaintiffs became aware of Defendant's unauthorized use of the infringing menu board.  (Compl. ¶ 12.)  On August 6, 2019, Plaintiffs served Defendant with a notice demanding that Defendant cease and desist any further use of the infringing menu board.  (*Id.* ¶ 13.) Defendant ignored Plaintiffs' cease and desist notice and continues to unlawfully use the Mister Softee trademarks in the operation of her ice cream truck business.  (*Id.* ¶ 14.)

---

[1] The Complaint also alleges that Plaintiffs own the trademark registered at Registration number 0663456. However, a search of the USPTO website using its Trademark Electronic Search System (TESS) does not return any results for a recorded registration number of "0663456."  http://tess2.uspto.gov (last visited June 30, 2020).  Plaintiffs' Memorandum of Law in Support of their Motion for Entry of Judgment by Default, Permanent Injunction, and Attorney's Fees ("Memo of Law," Dkt. 10) only discusses two trademarks, *i.e.*, those bearing the registration numbers 2128918 and 0667335.  (Memo of Law at *7.)  Accordingly, this Report and Recommendation only considers the two registered trademarks.

## II.    **Procedural Background**

On August 26, 2019, Plaintiffs filed the Complaint alleging trademark infringement under the Lanham Act and violations of unfair competition and unfair trade practice under New York common law. (*See id.* ¶ 18, )   The Summons and Complaint were served on Defendant through "nail and mail" service at her last known address.  (*See* Victoria Medley Affidavit of Service ("Medley Aff. of Service") ¶ 3, Dkt. 6; Ex. A to Medley Aff. of Service, Augustus Wilson Affidavit of Service ("Wilson Aff. of Service"), Dkt. 6-1.)  Defendant failed to file an answer by the October 21, 2019 deadline.

On November 13, 2019, Plaintiffs requested a Certificate of Default (Dkt. 7), which was issued on November 21, 2019.  (Dkt. 8.)

On November 26, 2019, Plaintiffs filed the Motion.  (Dkt 9.)  On May 14, 2020, Plaintiffs filed the Memo of Law.  (Dkt. 10.)  An inquest was held by telephone on June 12, 2020, at which Plaintiffs' counsel appeared, but Defendant did not appear; at that time, the Court directed Plaintiffs to "submit support, including timesheets, for their attorneys' fees and costs."  (Minute Entry dated June 12, 2020.) Thereafter, Plaintiffs filed the Fees Motion on June 18, 2020.  (Dkt. 12.)

## DISCUSSION

## I.    **Standard for Default Judgment**

Federal Rule of Civil Procedure 55 governs the process that applies in cases where there is a default during the course of litigation.  *See* Fed. R. Civ. P. 55; *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  It provides "a 'two-step process' for the entry of judgment against a party who fails to defend."  *Id.; see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  Then, the plaintiff must "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

After Defendant failed to answer the Complaint, Plaintiffs requested and received a Certificate of Default, and then properly moved for default judgment. *See* Fed. R. Civ. P. 55; *Mickalis,* 645 F.3d at 128. (*See* Cert. of Default; Motion.) Plaintiffs mailed Defendant a copy of the Motion and accompanying papers in compliance with Local Rule 55.2(c). (*See* Frank Reino Affidavit of Service ("Reino Aff. of Service"), Dkt. 10-2).

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (citations omitted). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co.*, 696 F. Supp. 2d at 208. The Court must ensure: (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-27; (2) the plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The Court exercises significant discretion in deciding whether to grant a default judgment, including determining whether the grounds for default and the amount of damages sought are clearly established. *See GuideOne Specialty Mut. Ins.* Co., 696 F. Supp. 2d at 208; *see also Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *4 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *Mickalis*, 645 F.3d at 129. The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence, detailed affidavits, or testimony at an inquest. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc.*, 681 F. Supp. 2d 340, 346 (E.D.N.Y. 2010). The amount of damages, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83-84 (E.D.N.Y. 2012).

## II.    <u>Jurisdiction</u>

The court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action.  *See Mickalis*, 645 F.3d at 125-26; *see also Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010).  The Court may also establish that it has personal jurisdiction over the defendant.  *See Mickalis*, 645 F.3d at 133; *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).

### A.  *Subject Matter Jurisdiction*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiffs' claims against Defendant are based upon trademark infringement under the Lanham Act.

### B.  *Personal Jurisdiction and Service*

"[A] court may not properly enter a default judgment until it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process."  *Lopez v. Yossi's Heimishe Bakery Inc.*, No. 13-CV-5050 (FB)(CLP), 2015 WL 1469619, at *4 (E.D.N.Y. Mar. 30, 2015).  An individual may be served according to state law where service is made.  Fed. R. Civ. P. 4(e)(1).  New York state law allows "nail and mail" service where personal service cannot be completed.  N.Y. C.P.L.R. § 308(4).

Here, the process server attempted service at Defendant's last known address on three separate occasions: Monday, September 9, 2019 at 12:37 pm.; Thursday, September 19, 2019 at 7:20 am; and Friday, September 27, 2019 at 7:25 pm.  (*See* Medley Aff. of Service ¶ 3; Wilson Aff. of Service.)  During the final attempt at service, the process server left a copy of the Complaint at Defendant's residence and subsequently mailed a copy to the same address.  (*See* Medley Aff. of Service ¶ 4; Wilson Aff. of Service.)  These multiple attempts to serve Defendant personally at her residence, followed by affixing a copy of the Complaint to the door and mailing her a copy, constitute proper service.  *See* Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(4); *see also Gardner v. Lefkowitz*, 737 F. App'x 597, 598 (2d

Cir. Sept. 21, 2018) (three service attempts at residence is sufficient to permit "nail and mail" service); *S.E.C. v. Reynolds*, No. 96-6073, 1996 WL 599797, at *2 (2d Cir. Oct. 18, 1996) (three attempts to effect personal service at an individual's residence, "including two during non-business hours, satisfy the due diligence requirement" before "nail and mail" can be used); *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 262 (E.D.N.Y. 2011) (four attempts at service during different times of the day is sufficient to permit "nail and mail" service).

### III.    <u>Procedural Compliance</u>

Plaintiffs filed the following documents in support of the Motion: Clerk's Certificate of Default (Dkt. 9-2); a copy of the Complaint (Dkt. 9-3); a proposed Order of Default Judgment ("Proposed Default Judgment") (Dkt. 9-4); Victoria Medley Attorney Affirmation in Support of Motion (Dkt. 9-1); the Memo of Law; proof of mailing of the Motion and Memo of Law to Defendant (Reino Aff. of Service); and the Fees Motion. The filing of these documents complies with Local Civil Rules 7.1 and 55.2.

### IV.    <u>Liability</u>

In determining liability, the Court accepts as true the well-pleaded allegations of the Complaint, drawing all reasonable inferences in favor of Plaintiffs. *See Finkel*, 577 F.3d at 84; *see also Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158-59 (2d Cir. 1992). Plaintiffs allege that Defendant is liable for trademark infringement, false designation of origin, and trademark dilution, as well as common law unfair competition and unfair trade practices.[2]  (*See* Compl. ¶¶ 18-19.)

The Lanham Act serves "to protect the holders of trademarks from the promotion and sale of competing products likely to confuse consumers as to their source." *Tanning Research Labs., Inc. v. Worldwide Import & Export Corp.*, 803 F.Supp 606, 608 (E.D.N.Y. 1992); *see, e.g., Lois Sportswear, U.S.A.,*

---

[2] While all these allegations are made in the Complaint, the Motion does not explicitly reassert the common law claims and does not seek liability under common law. Accordingly, the claims of unfair competition and unfair trade practices are not addressed in this Report and Recommendation.

*Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986). A plaintiff can prevail on a claim for either trademark infringement or false designation of origin if it can show that (1) the plaintiff owns a valid trademark, and (2) the defendant's use of that trademark "is likely to cause confusion." *Rolex Watch U.S.A., Inc. v. Jones*, No. 99-CV-2359 (DLC)(FM), 2000 WL 1528263, at *2 (S.D.N.Y. Oct. 13, 2000) (citing *Time, Inc. v. Peterson Publ'g Co., L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999)).

### A. Ownership of the Trademarks and Use by Defendant

The Complaint explicitly states that MSI owns the Trademarks. (Compl. ¶ 9.) However, it is imprecise as to whether MSQ also owns them. The Complaint states that "Mister Softee" owns the Trademarks (*id.* ¶ 2), and "Mister Softee" is defined as referring collectively to MSI and MSQ. (*Id.* ¶ 1.) However, the Complaint describes MSQ as a "sub-franchisor of Mister Softee" and states that "MSI granted MSQ the right to use, and license others the right to use, the Mister Softee trademarks." (*Id.* ¶ 3.) If MSQ also owned the Mister Softee trademarks, MSI would not need to grant MSQ the right to use them. Accordingly, even drawing all inferences in favor of the moving party, the undersigned finds that only MSI owned the Mister Softee trademarks.

MSI's ownership of valid federally registered trademarks meets the first prong of the test.

The Complaint also adequately alleges that Defendant operates an ice cream truck, using a menu board which displays the Mister Softee trademarks as part of her business. (*Id.* ¶ 12.)

### B. Likelihood of Confusion

In addition to proving the protectability of its mark, a plaintiff must prove "a probability of confusion, not a mere possibility," affecting "numerous ordinary prudent purchasers." *Gruner + Jahr USA Pub. v. Georgia-Pacific Inc.*, 991 F.2d 1072, 1077 (2d Cir. 1993). "Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." *Guiness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*, 64 U.S.P.Q.2d 1039, 1041 (S.D.N.Y. 2002) (citing *McDonald's Corp. v. McBagel's, Inc.*, 649 F.Supp. 1268, 1273 (S.D.N.Y. 1986)).

"In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979) (citations omitted). Courts evaluate whether a "likelihood of confusion" has been established by considering the eight *Polaroid* factors:

> (1) the strength of the plaintiff's mark;
> (2) the degree of similarity between the two marks;
> (3) the proximity of the products in the marketplace;
> (4) the likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product);
> (5) evidence of actual confusion;
> (6) the defendant's bad faith;
> (7) the quality of the defendant's product; and
> (8) the sophistication of the relevant consumer group.

*See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). No single factor is dispositive. *See Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F.Supp. 2d 145, 160 (E.D.N.Y. 2013). The court weighs the factors with an eye towards "the ultimate question of whether consumers are likely to be confused." *Paddington Corp. v. Attiki Importers & Distrib., Inc.,* 996 F.2d 577, 584 (2d Cir. 1993) (citing *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 580 (2d Cir. 1991)).

### i.  Strength of Plaintiffs' Mark

"[T]he strength of a mark depends ultimately on its distinctiveness or its 'origin-indicating' quality, in the eyes of the purchasing public." *McGregor-Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131-32 (2d Cir. 1979). "An incontestable registered trademark enjoys a conclusive presumption of distinctiveness." *Savin Corp. v. Savin Grp.,* 391 F.3d 439, 457 (2d Cir. 2004); s*ee also Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 204-05 (1985). "[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear*, 799 F.2d at 871 (citation omitted). Because MSI registered the Mister Softee trademarks with the USPTO, the Mister Softee

trademarks enjoy a presumption of distinctiveness and strength. *See LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 680 (S.D.N.Y. 2016).

### ii. Degree of Similarity Between Marks

Defendant used an exact copy of the Mister Softee trademarks on her infringing menu board, so similarity between the marks used is strong. (Compl. ¶ 12; Ex. A to Compl.)

### iii. Proximity in Marketplace

In assessing proximity in the marketplace, "the court may consider whether the products differ in content, geographic distribution, market position, and audience appeal." *W.W.W. Pharm. Co., Inc. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993); *see also C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir. 1985). Plaintiffs and Defendant operate mobile ice cream trucks in and around Queens and Long Island, New York. (Compl. ¶¶ 1, 3.) Plaintiffs and Defendant both sell ice cream products, and their trucks cater to a similar audience. (*Id.* ¶¶ 7, 12.) Thus, Plaintiffs' and Defendant's commercial products are considered proximate in the marketplace.

### iv. Likelihood of Plaintiff Bridging Gap Between Products

This factor "is closely related to the proximity of the products," and is fulfilled if a trademark owner can show that it intends to enter the market of the alleged infringer. *Lois Sportswear*, 799 F.2d at 874. Here, Defendant used the Mister Softee trademarks themselves on her menu board, and the parties already operate in the same marketplace. Therefore, there is no gap for Plaintiffs to bridge.

### v. Evidence of Actual Confusion

Plaintiffs are not required to show actual confusion, because the Lanham Act requires "only a likelihood of confusion as to source." *Lois Sportswear*, 799 F.2d at 875; s*ee, e.g., W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970).

### vi.  Defendant's Bad Faith

This factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang*, 949 F.2d at 583 (quoting *Edison Bros. Stores, Inc. v. Cosmair, Inc.*, 651 F.Supp. 1547, 1560 (S.D.N.Y. 1987)).  Plaintiffs allege that Defendant intentionally copied the Mister Softee trademarks on her ice cream truck menu board, supporting an intent to create a confusing similarity between products.  (Memo of Law at 9.)  *See Philip Morris Inc. v. Star Tobacco Corp.*, 879 F. Supp. 379, 387 (S.D.N.Y. 1995) (similarity of mark allows the court to determine intent to create a confusing similarity between products); s*ee also Stark Carpet Corp.*, 954 F. Supp. 2d at 162 ("Courts have recognized that in the absence of smoking gun evidence that a defendant adopted an imitative mark to deceive, deliberate copying may indicate that the defendant acted in bad faith." (quotation and citations omitted)).  Here, Defendant's use of the exact Mister Softee trademarks to sell ice cream from her truck gives rise to an inference of an intent to create confusion between her products and those of the Mister Softee brand and is thus indicative of her bad faith.

### vii.  Quality of Defendant's Product

Plaintiffs argue that they do not have the ability to control the quality of Defendant's products, or to ensure her compliance with applicable health standards and regulations, and with Plaintiffs' internal company standards.  (Memo of Law at 9.)  They also argue that the quality of Defendant's products are of particular importance here, as substandard quality jeopardizes Plaintiffs' goodwill and business reputation.  (*Id.*)  However, Plaintiffs have not produced any information regarding the quality of Defendant's product despite their ability readily to purchase it.  Accordingly, this factor does not favor Plaintiffs.

### viii.   *Sophistication of Consumer Group*

Finally, in assessing the sophistication of relevant purchasers, courts consider "[t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *McGregor-Doniger*, 599 F.2d at 1137 (quoting 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies § 81.2, at 577 (3d ed. 1969)).   Typically, a consumer can be expected to be more careful in their purchase of items with greater value.  *See id.*

Plaintiffs claim that the majority of their customers are small children, who are "unsophisticated [and] prone to impulse purchases." (Memo of Law at 9.)  Thus, Plaintiffs contend, Defendant's use of the Trademarks is likely to confuse Plaintiffs' customers, who will be unable to differentiate between an authentic Mister Softee franchise and an unauthorized seller.  (*Id.*)  While this statement is not in the Complaint and does not enjoy the presumption of truth, *cf., Mister Softee, Inc. v. Konstantakakos*, 15-CV-4770 (SJ)(SMG), 2016 WL 11445964 at *3 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016), the undersigned accepts the inference that the customers are likely small children or those making impulse purchases on their behalf.  Therefore, the relative lack of sophistication of the consumer group weighs in favor of Plaintiffs.

*             *             *

Having considered the *Polaroid* factors, the undersigned finds that they overwhelmingly weigh in Plaintiffs' favor to support a conclusion of a likelihood of confusion.

Accordingly, the undersigned respectfully recommends a finding that Defendant is liable to MSI for trademark infringement and false designation of origin pursuant to the Lanham Act. [3]

---

[3] In the Complaint and Motion, Plaintiffs also seek relief for trademark dilution pursuant to 15 U.S.C. § 1125(c). Plaintiffs' trademark dilution claim seeks relief for the same injuries asserted in connection with Plaintiffs' trademark infringement and false designation of origin claims.  Further, Plaintiffs do not seek a separate award of damages or equitable relief for their trademark dilution claim.  Therefore, the undersigned does not consider whether the elements of trademark dilution are satisfied by the allegations in the Complaint.

## V.     Remedies

The Complaint initially sought statutory damages in addition to injunctive relief and attorneys' fees and costs.  (Compl. ¶ 22.)  However, the Motion requests only injunctive relief and attorneys' fees and costs.  (Memo of Law at 3.)  Accordingly, only these remedies will be considered.

### A.  *Injunctive Relief*

The Court is authorized to grant injunctive relief under the Lanham Act.  15 U.S.C. § 1125(c)(1).  Injunctions may be imposed in conjunction with a default judgment.  *See Mickalis*, 645 F.3d at 143.  Plaintiffs request a permanent injunction restraining Defendant from infringing upon the Mister Softee trademarks, and an order that Defendant deliver and/or destroy all materials bearing the Mister Softee trademarks (Compl. ¶ 22(d); Proposed Default Judgment ¶ d.)

The Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the [USPTO]."  15 U.S.C. § 1116(a).

### 1.  **Permanent Injunction**

To obtain a permanent injunction in a trademark infringement suit, a plaintiff must have succeeded on the merits of the claim and shown that:

> (1) the plaintiff is likely to suffer irreparable injury in the absence of an injunction;
> (2) remedies at law, such as monetary damages, are inadequate to compensate the plaintiff for that injury;
> (3) the balance of hardships tips in the plaintiff's favor; and
> (4) the public interest would not be disserved by the issuance of a permanent injunction.

*See Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)); *see also Microsoft Corp. v. AGA Sols., Inc.*, 589 F. Supp. 2d 195, 204 (E.D.N.Y. 2008) (applying *eBay* in the context of a permanent injunction trademark case).

As discussed above, Plaintiff MSI has succeeded on the merits of its claims of trademark infringement and false designation of origin. Therefore, the undersigned begins the analysis with the irreparable injury prong.

### a. Irreparable Injury

When assessing whether an irreparable injury has occurred, "the court must actually consider the injury the plaintiff [has] suffer[ed] . . . , paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger*, 607 F.3d at 80 (citing *eBay*, 547 U.S. at 391). A loss that is difficult to replace or to measure is generally irreparable. *Id.* at 81. Here, Plaintiffs have alleged that, as a result of Defendant's infringement, business will be diverted, and the goodwill associated with the Mister Softee trademarks will be taken from their control. (Compl. ¶¶ 20-21.) "Reputational damage is difficult to measure and constitutes irreparable injury." *Mister Softee, Inc. v. Konstantakakos.*, 2016 WL 11445964 at *4. The claimed damages here are difficult to measure and accordingly amount to irreparable injury.

### b. Adequacy of Remedies at Law

Remedies at law may be insufficient where a defendant has defaulted, because "the default gives rise to the inference that the [d]efendant is willing to continue to infringe upon [p]laintiffs' mark." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-0946 (JS)(AKT), 2015 WL 1299259, at *18 (E.D.N.Y. Mar. 23, 2015). Where the defendant defaults, "[a] court may infer . . . that [the defendant] is willing to, or may continue its infringement." *Pearson Educ., Inc. v. Vergara*, No. 09-CV-6832 (JGK)(KNF), 2010 WL 3744033, at *4 (S.D.N.Y. 2010); *see also AW Indus., Inc. v. Sleepingwell Mattress Inc.*, No. 10-CV-04439 (NGG)(RER), 2011 WL 4404029, at *11 (E.D.N.Y. Aug 31, 2011), *R&R adopted*, 2011 WL 4406329 (E.D.N.Y. Sept. 21, 2011); *Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F.Supp.2d 245, 259 (E.D.N.Y. 2010). Defendant has defaulted, giving rise to the inference that she will continue to infringe on the Mister Softee trademarks.

### c.  Balance of Hardships

"The balance of hardships will generally tip in the plaintiff's favor where 'it has established irreparable harm and that the infringing conduct is likely to continue absent injunctive relief.'"  *Sola Franchise Corp.*, 2015 WL 1299259, at *18 (quoting *AW Indus., Inc.*, 2011 WL 4404029, at *11).  Both these criteria have been established here.  Further, the proposed injunction will not harm Defendant as, other than barring her from using the Mister Softee trademarks, it will not otherwise limit her ability to operate her business. *See id.*  Accordingly, the balance of hardships favors Plaintiffs.

### d.  Public Interest

The public "has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."  *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).  Thus, an injunction is in the public interest when it "protect[s] the public from confusion" and helps to prevent "deceit and confusion in consumer transactions." *AW Indus.*, 2011 WL 4404029, at *11; *see also Sola Franchise Corp.*, 2015 WL 1299259, at *18.  Here, the injunction Plaintiffs seek is in the public interest because it would help stop Defendant from deceiving consumers and causing confusion in the marketplace.

\*       \*       \*

Based on the foregoing analysis, the undersigned respectfully recommends that a permanent injunction be issued restraining Defendant from further infringement of the Mister Softee trademarks.

### 2.  **Destruction of Infringing Goods**

Plaintiffs also request an order requiring Defendant to destroy and/or deliver all infringing materials to Plaintiffs for destruction.  Where there is a violation of the false designation provision of the Lanham Act, the Court may order the delivery and destruction of items bearing the infringing mark.  15 U.S.C. § 1118.  Such a request may be denied if it is unnecessary in light of a permanent injunction against further infringement.  However, when a defendant has failed to appear, an order

14

directing the delivery of infringing articles for destruction may nevertheless be appropriate. *See Diesel S.P.A. v. Does*, No. 14-CV-4592 (KMW), 2016 WL 96171, at *11 (S.D.N.Y. Jan. 8, 2016) (granting requests for permanent injunction and a § 1118 order as "necessary to protect plaintiff's interests" in light of the defendants' default); *Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc.*, No. 13-CV-2548 (KMW)(JLC), 2014 WL 1303434, at *7 (S.D.N.Y. Apr. 1, 2014) ("In light of Defendants' failure to appear in this action, the Court finds that relief under 15 U.S.C. § 1118 is appropriate in this case."). Because of Defendant's default and the lack of assurance that Defendant will comply with the terms of the permanent injunction, the undersigned finds that Defendant should also be ordered to to "deliver and/or destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in her possession bearing the words and/or symbols that are the subject of the trademark or trade name violation or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same." (Proposed Default Judgment ¶ d.)

### B. Attorneys' Fees

#### a. Standard

The Lanham Act permits a court to "award reasonable attorney fees to the prevailing party" "in exceptional cases." 15 U.S.C § 1117(a). Whether "to award attorneys' fees [is an issue that] 'falls well within the district court's discretion.'" *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir. 1996) (quoting *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir. 1988)) (alteration omitted). Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

In trademark infringement cases a "presumptively reasonable fee" is calculated using the "lodestar method," which is "the product of a reasonable hourly rate and the reasonable number of

hours required by the case." *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 299 (E.D.N.Y. 2015). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, 2016 WL 11445964, at *6 (quotation and citation omitted). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 09-CV-0451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)).

"The burden is on the moving party to show that the fees it requests are reasonable." *Id.* at *5. "Requests for attorney's fees must be accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Innovative Sports Mktg., Inc. v. Aquarius Fuente de Soda, Inc.*, No. 07-CV-2561 (ENV)(CLP), 2009 WL 3173968, at *11 (E.D.N.Y. Sept. 30, 2009) (quotation and citation omitted). "Inadequate documentation is grounds for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

In the Fees Motion, Plaintiffs seek $7,611.00 in attorneys' fees for the work of two different law firms, Fisher Zucker LLC and the Law Office of Zachary Margulis-Ohnuma ("ZMO"). (*See* Certification of Frank A. Reino Itemizing Plaintifffs' Attorney's Fees and Expenses ("Reino Certification") ¶ 7, Dkt. 12-2.) Specifically, Plaintiffs seek $5,128.50 for Fisher Zucker's work[4] and

---

[4] Reino does not consistently state the total fee his firm, Fisher Zucker, incurred on Plaintiffs' behalf. In paragraph 5 of his Certification, he states, "[t]he time for attorneys Zucker, Reino and Graziano totals 10.6 hours and $4,496.50, as itemized on the bill attached [to the Certification] as Exhibit 'A.'" (Reino Certification ¶ 5.) The undersigned confirmed that the time itemized in Exhibit A to Reino's Certification totals $5,128.50, the amount set forth in paragraph 7.

$2,482.50 for ZMO's work.[5]  (*Id.*; *see also* Certification of Victoria Medley in Support of Plaintiffs' Motion for Attorneys' Fees ("Medley Certification") ¶ 5, Dkt. 12-3.)  The fees sought by each firm are addressed separately below.

### b.  Fisher Zucker

### i.  Hourly Rates

Three attorneys at Fisher Zucker worked on this action.  The first, Jeffrey Zucker, is the firm's managing partner and has an hourly rate of $500.  (Reino Certification ¶ 4.)  Zucker was admitted in Pennsylvania and New Jersey in 1993, "represent[s] franchise companies in a wide range of litigation, transactions and regulatory matters," and "has been representing [Plaintiffs] since approximately 1998."  (*Id.*)  The second attorney, Frank Reino, has been practicing law since 2003, is admitted in Wisconsin, Pennsylvania, and New Jersey, has been representing Plaintiffs since 2007, and bills at $440 per hour.  (*Id.*)  The third attorney, Christina Graziano, was admitted in Massachusetts in 2013 and has an hourly rate of $375.  (*Id.*)

Another court in this district recently considered the reasonableness of Zucker and Reino's hourly rates in a case that was substantially similar to the present action.  In *Mister Softee, Inc. v. Konstantakakos*, Plaintiffs employed Zucker and Reino, and a firm called Tor Ekeland, P.C., which served as local counsel, to bring a trademark infringement action against Dimitrios Konstantakakos. *Mister Softee, Inc. v. Konstantakakos*, 2016 WL 11445964, at *5.  Plaintiffs alleged that Konstantakakos "infringe[d] on [P]laintiff's trademark by playing [Plaintiffs'] jingle" from his ice cream truck.  *Id.* at *1.  The defendant did not appear, and Plaintiffs brought a default judgment motion, seeking injunctive relief and attorneys' fees.  *Id.*  Plaintiffs sought reimbursement for Zucker at the rate of $425 per hour and Reino at $365 per hour.  *Id.* at *5.  The court found that "Fisher Zucker LLC [ ]

---

[5] Upon review of the itemized bill ZMO submitted in support of its portion of the fees application, the undersigned determined that ZMO incurred $2,237.50 in fees and not $2,482.50.  (*See* Medley Certification Ex. A at 4-10.)

made a brief showing of the professional experience of these attorneys, but [did] not ma[k]e any attempt to demonstrate the reasonableness of the hourly rates charged by the firm in light of the prevailing rates in this district or to demonstrate any particular expertise that would justify a higher rate." *Id.* Therefore, the court reduced Zucker's rate to $325 per hour and Reino's to $265 per hour. *Id.*

Plaintiffs here contend that Fisher Zucker's "rates are reasonable as they are well within other rates courts in this area of practice and in the Queens [sic] and surrounding area have held as reasonable." (Plaintiffs' Memorandum of Law in Support of Their Motion Attorneys' Fees and Costs Pursuant to 15 U.S.C. § 1117(a) at 6, Dkt. 12-1.) However, half of the cases Plaintiffs cite are from the Southern District and are, therefore, inapplicable. *See Field Day, LLC v. Cty. of Suffolk*, No. 04-CV-2202 (DRH)(ETB), 2010 WL 5491025, at *3 (E.D.N.Y. Sept. 9, 2010), *R&R adopted*, 2010 WL 5490990 (E.D.N.Y. Dec. 30, 2010) (reducing a firm's "Southern District of New York billing rates . . . to comply with those accepted as reasonable in the Eastern District of New York").

The three cases Plaintiffs cite that are from the Eastern District are also inapposite. In *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.*, No. 04-CV-2293 (SMG), 2009 WL 5185808 (E.D.N.Y. Dec. 23, 2009), *aff'd* 409 F. App'x 389 (2d Cir. 2010), the court found that the rates, which ranged from $300-$325 for the associate with six years of experience to $425-450 for the partner with 44 years of experience, were reasonable in light of the "unique challenges, particularly during the discovery phase," posed by the case. *Id.* at *5, *6. Here, Plaintiffs have not demonstrated that this case has posed any "unique challenges," nor was there any discovery. Similarly, in *Microsoft Corp. v. Computer Care Center, Inc.*, No. 06-CV-1429 (SLT)(RLM), 2008 WL 4179653 (E.D.N.Y. Sept. 10, 2008), the court found that the hourly rates, which ranged from $250 to $500, were reasonable because the "[p]laintiffs' counsel vigorously and effectively prosecuted th[e] action," which involved issues that were "not simplistic," "against recalcitrant defendants" "for nearly two years." *Id.* at *15.

Plaintiffs have not shown that the issues here are "not simplistic." Further, this case was filed less than a year ago, and Defendant never appeared. In *Entral Group International, LLC v. Sun Sports Bar Inc.*, No. 05-CV-4836 (CBA), 2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007), the final Eastern District case on which Plaintiffs rely, the plaintiff's attorneys successfully obtained a temporary restraining order, preliminary injunction, permanent injunction, statutory damages, and forfeiture for their client. In the instant case, Plaintiffs only seek an injunction.

Accordingly, Plaintiffs have not "demonstrate[d] the reasonableness of the hourly rates charged by [Fisher Zucker] in light of the prevailing rates in this district or" that "any particularly expertise [ ] justif[ied] a higher rate." *Mister Softee, Inc. v. Konstantakakos*, 2016 WL 11445964, at *5. The undersigned thus recommends that Zucker and Reino be compensated at the rates set forth in *Konstantakakos*, *i.e.*, $325 per hour and $265 per hour, respectively, and that Graziano be compensated at the rate of $225 per hour.

### ii. Hours Expended

Fisher Zucker's attorneys expended 11.9 hours on the instant action.[6] (*See* Reino Certification Ex. A at 5-10.) Of those hours, three were spent on the Fees Motion and the remaining 8.9 were spent on the rest of the litigation. Although the undersigned generally finds the 8.9 hours spent up to and including the default judgment motion to be reasonable, Fisher Zucker's attorneys appear to have spent quite a bit of that time communicating with local counsel and third parties. (*See, e.g., id.* at 5, 9 (billing entries for September 3, 2019, September 10, 2019, September 11, 2019, September 19, 2019, May 8, 2020, and May 13, 2020).) However, because Fisher Zucker's attorneys "block billed" their time, it is not possible to determine the amount of time they spent communicating with co-counsel, as opposed to their other tasks. Accordingly, the undersigned recommends a ten percent reduction

---

[6] Reino states in his Certification that "[t]he time for attorneys Zucker, Reino and Graziano totals 10.6 hours." (Reino Certification ¶ 5.) However, the hours set forth in the exhibit to Reino's Certification total 11.9 hours. (*See* Reino Certification Ex. A at 5-10.)

in the non-Fees Motion hours expended by Fisher Zucker's attorneys. *See TADCO Constr. Corp. v. Dormitory Auth. of the State of N.Y.*, No. 08-CV-0073 (KAM)(MDG), 2016 WL 11669712, at *5 (E.D.N.Y. Dec. 21, 2016) ("In instances where the court will grant attorney's fees but the record keeping consists of block-billing, it is appropriate to implement a percentage reduction to the requested hours because block entries make it difficult for the court to determine whether the time expended was reasonable." (citation omitted)).

On June 12, 2020, the undersigned "directed [Plaintiffs] to submit *support*, including timesheets, for their attorneys' fees and costs." (Minute Entry dated June 12, 2020 (emphasis added).) Instead, Plaintiffs submitted a complete motion, including a notice, a certificate of service, and an eight-page memorandum of law. (*See* Dkt. 12.) The Motion already contained extensive legal arguments in support of attorneys' fees, rendering the Fees Motion and its accompanying memorandum of law largely duplicative. (*See* Memo of Law at 13-14.) Zucker and Reino billed three hours to drafting the Fees Motion, a third of which was billed by Zucker, the highest billing attorney on the case. Accordingly, the undersigned recommends reducing the hours Reino and Zucker spent to one and reimbursing that hour at Reino's rate.

### iii. Recommendation for Fisher Zucker

The undersigned recommends that the award sought by Plaintiffs for Fisher Zucker's fees be modified in the following manner:

| Attorney | Submitted Rate | Modified Rate | Submitted Hours (Non-Fees Motion) | Modified Hours (Non-Fees Motion) | Fee Awarded |
|---|---|---|---|---|---|
| Zucker | $500 | $325 | 1 | 0.9 | $292.50 |
| Reino | $440 | $265 | 4.4 | 3.96 | $1,049.40 |
| Graziano | $375 | $225 | 3.5 | 3.15 | $708.75 |
| *Non-Fees Motion Total* | | | | | $2,050.65 |
| *Grand Total* (Including Work on Fees Motion) | | | | | $2,315.65 |

Thus, the undersigned further recommends that Plaintiff be awarded $2,315.65 in fees attributable to Fisher Zucker's work.

### c. ZMO

#### i. Hourly Rates

One attorney, Victoria Medley, and one paralegal, Sophia Lattanzio, from ZMO worked on this action. (Medley Certification ¶ 3.) Medley was admitted in New Jersey in 2014 and New York in 2015. She started "acting as local counsel for Plaintiffs on Mister Softee Matters [in] August 2019." (*Id.* ¶ 4.) Her rate is $350 per hour. (*Id.*) Lattanzio "has been a full-time paralegal [at ZMO] since June 2019." (*Id.*) Her rate is $125 per hour. (*Id.*)

Plaintiffs offer the same explanation for the reasonableness of Medley and Lattanzio's billing rates as they did for the rates of the Fisher Zucker attorneys. As set forth above, this justification is insufficient to satisfy Plaintiffs' burden to demonstrate the reasonableness of the rates sought. Thus, the undersigned recommends reducing Medley's rate to $225 per hour.

Plaintiffs do not state specifically when Lattanzio started working as a paralegal. Therefore, the undersigned assumes that she began working in this profession in June 2019, when she started as a full-time paralegal at ZMO. Because "[a]n hourly rate of $100 is within the range typically awarded to paralegals in this district," *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *13 (E.D.N.Y. Apr. 11, 2016), the undersigned recommends reducing Lattanzio's rate to $100 per hour.

#### ii. Hours Expended

Medley billed 6 hours to this case, and Lattanzio billed 1.1 hours. (*See* Medley Certification Ex. A at 4-10.) As with the Fisher Zucker attorneys, Medley billed a significant portion of her time to communicating with other attorneys. (*See id.* at 4, 6, 7, 9 (billing entries for August 2019, October 2019, November 2019, June 9, 2020, and June 12, 2020).) She performed tasks, such as filing

documents with the court, that should have been performed by a paralegal and not an experienced attorney. (*See id.* at 4-6, 9 (billing entries for August 2019, September 2019, October 2019, and June 9, 2020).) *See Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *12 (E.D.N.Y. May 4, 2020), *R&R adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020) (explaining that tasks like "review[ing] electronic orders and case management orders, [and] fil[ing] documents on ECF . . . should have been conducted by a paralegal"). Medley also appears to have billed time to the Fees Motion, although some of her billing entries are unclear. (*See, e.g.*, Medley Certification Ex. A at 9 (billing entry for June 9, 2020).) Further, Medley block billed her time. Indeed, some of her time appears to have been block billed by the month. (*See* Medley Certification Ex. A at 4-8 (billing entries for August 2019, September 2019, October 2019, and November 2019).)

Accordingly, the undersigned recommends a ten percent reduction in the number of hours billed by Medley. *See Flores v. Food Express Rego Park, Inc.*, No. 15-CV-1410 (KAM)(SMG), 2016 WL 386042, at *3 (E.D.N.Y. Feb. 1, 2016) (reducing an attorney's hours by 15% pursuant to the court's "'authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application'" (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987))).

Lattanzio's hours should also be reduced by ten percent, as some of her billing entries are overly vague. (*See, e.g.*, Medley Certification Ex. A at 9 (billing entry for June 16, 2020 ("Texts with Victoria Medley and Teresa McNamara regarding Diaz bills, try to log into Quickbooks… unsuccessful")).) *See Mister Softee, Inc. v. Konstantakakos*, 2016 WL 11445964, at *7 (reducing the hours worked where, *inter alia*, "[a] number of billing entries seem to be inappropriately vague").

### iii. Recommendation for ZMO

The undersigned recommends that the award sought by Plaintiffs for ZMO's fees be modified in the following manner:

| Attorney/Paralegal | Submitted Rate | Modified Rate | Submitted Hours | Modified Hours | Fee Awarded |
|---|---|---|---|---|---|
| Medley | $350 | $225 | 6 | 5.4 | $1,215 |
| Lattanzio | $125 | $100 | 1.1 | 0.99 | $99 |
| *Grand Total* | | | | | $1,314 |

Thus, the undersigned further recommends that Plaintiff MSI be awarded $1,314.00 in fees attributable to ZMO's work.

### C.  Costs

As the prevailing party, Plaintiff MSI is entitled to "the costs of the action."  15 U.S.C. § 1117(a).  Plaintiffs seek $425.16 in costs (Reino Certification ¶ 7), which includes the $400 filing fee (Reino Certification Ex. A at 6) and $25.16 for a messenger service (*id.* at 9).  The undersigned finds that these costs are reasonable and recommends that they be awarded.  *See Mister Softee, Inc. v. Konstantakakos*, 2016 WL 11445964, at *7 (awarding $679.91 in costs, which included the filing fee and a courier service); *see also Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding the plaintiff the $400 filing fee after taking judicial notice of it).

### CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motions for Default Judgment and Attorneys' Fees and Costs be granted as to Plaintiff MSI, and that MSI be awarded injunctive relief and attorneys' fees and costs of $4,054.81.  Plaintiffs are directed to serve this Report and Recommendation on Defendant and file proof of service on the docket by July 7, 2020.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(B)(1); Fed. R. Civ. P. 72(b).  Failure to file timely any such objection waives the right to further judicial review of this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
_____

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          July 2, 2020

24